## A01A0930. REESE v. THE STATE.
### (556 SE2d 150)

ANDREWS, Presiding Judge.

Brandon Reese appeals his convictions for driving under the influence and possession of an open container. He claims that the trial court erred in denying his motion to suppress and in admitting evidence of his previous DUI conviction. Reese also contends that the trial court erred by: (1) quashing Reese's subpoena of certain police radio communications records, (2) ruling on the merits of a motion to recuse, (3) refusing to allow certain testimony concerning the bias of a State witness, and (4) failing to require the State to produce the original of the videotape of Reese's arrest. Reese further argues that the City Court of Atlanta is not legally constituted. We find that none of these claims has merit, and for the reasons set forth below, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). So viewed, the evidence shows that, in the early morning hours of August 5, 2000, a red Jeep crossed several lanes to exit from northbound I-75 onto Northside Drive in

---

Atlanta and "cut off" an unmarked police car driven by Major Peter Andreson, an off-duty police officer. Andreson followed the Jeep northbound on Northside Drive, but the Jeep made a U-turn in the front yard of a residence and headed back in a southerly direction. Andreson radioed Officer Centola for assistance. Upon receiving Andreson's message, Centola drove to Northside Drive where he saw a Jeep weaving across the lanes. The vehicle would also slow or stop as it came to the reversible lane markers, as if the driver thought they were traffic signals. At Northside and Fourteenth Street, the Jeep turned into a convenience store parking lot, and Centola parked across the street at a Krystal restaurant. Centola intended to stop the vehicle to investigate a traffic violation, but decided that the gas station was too crowded to perform a field sobriety test. Reese and his passenger left the gas station and drove across the street to the Krystal restaurant where Reese and a passenger got out of the Jeep. Officer Centola approached them before they could go inside.

Centola noticed that Reese smelled of alcohol, that his face was pale and sweaty, and that he was thick-tongued and slow in his speech. In response to questioning by the officer, Reese denied he had been drinking, but agreed to undergo a field sobriety test. The field sobriety test included the horizontal gaze nystagmus evaluation, the nine-step walk and turn, the one-leg stand, and a recitation of the alphabet. Reese performed poorly on these tests. Reese also took a preliminary breath test which indicated the presence of alcohol. Centola concluded that Reese was not safe to drive and that he was under the influence of alcohol. Centola arrested Reese and informed him of his implied consent rights. Reese then underwent a breath analysis test which showed he had a blood alcohol content of 0.182. In Reese's Jeep, Officer Centola found four empty bottles of beer.

1. Reese argues that the trial court erred in denying his motion to suppress because Officer Centola stopped Reese without articulable grounds to believe he had committed a traffic offense. The trial court held an evidentiary hearing with respect to the motion to suppress. "Credibility of witnesses, resolution of any conflict or inconsistency, and weight to be accorded testimony [are] solely the province of the judge on a motion to suppress." *Rogers v. State*, 155 Ga. App. 685, 686 (2) (272 SE2d 549) (1980). The trial court's findings of fact must be accepted unless clearly erroneous. *Williams v. State*, 151 Ga. App. 833, 834 (1) (261 SE2d 720) (1979).

The evidence presented at the hearing on Reese's motion to suppress shows that Officer Centola observed a Jeep weaving across the road and stopping at reversible lane markers as if they were traffic signals, that this same Jeep turned into a convenience store and then drove across to the Krystal restaurant, and that Reese was the driver of this vehicle. The trial court found that Officer Centola had suffi-

cient articulable suspicion to detain Reese for the purpose of investigating Reese's driving behavior, see *Taylor v. State*, 249 Ga. App. 733, 734-735 (549 SE2d 536) (2001), and that, after Reese had performed the field sobriety test, the officer had probable cause to arrest him. The record supports these conclusions, and we find no error in the trial court's denial of Reese's motion to suppress.

2. Reese further claims that the trial court erred in admitting evidence of his previous DUI conviction as a similar transaction. We disagree. In order for similar transaction evidence to be properly admissible, the State must establish a permissible purpose for admitting the evidence, sufficient evidence that the defendant committed the prior act, and sufficient similarity between the two acts that proof of the former tends to prove the latter. See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

The State satisfied all three prerequisites for the introduction of similar transaction evidence. First, the State introduced evidence of the prior DUI offense for the purpose of showing Reese's bent of mind to consume alcohol and then operate a motor vehicle. Introduction of a prior DUI to show bent of mind in a subsequent DUI prosecution is a permissible purpose. See *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992). Second, the State showed that Reese was the perpetrator of the prior DUI. Third, the State showed that proof of the former DUI tended to prove the charge of driving under the influence. In considering this issue, we have noted that, unlike crimes against persons or property which might occur under various factual circumstances, "it is the simple act of driving . . . while under the influence that establishes the commission of [the crime]." Id. "Evidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so." (Citations omitted.) *Smith v. State*, 236 Ga. App. 548, 552 (3) (512 SE2d 19) (1999), rev'd on other grounds, 272 Ga. 83 (526 SE2d 59) (2000). We find no error by the trial court in admitting evidence of Reese's prior DUI.

Reese also challenges the testimony given in proving the similar transaction because it was highly inflammatory. The officer who investigated the previous DUI indicated that Reese was involved in an automobile collision which resulted in the severing of a passenger's hand. We see no basis for Reese to claim error with regard to the testimony referencing the severed hand because trial counsel did not object to the testimony. The trial court was not asked to rule on whether the testimony was impermissibly inflammatory, and we may not rule on objections not made at trial. See *Sales v. State*, 199 Ga. App. 791, 792 (2) (406 SE2d 131) (1991).

3. Reese asserts that the trial court improperly quashed his subpoena of Atlanta Police Department radio communication dispatch tapes. The subpoena sought:

> All original radio logs from the City of Atlanta Police Department on August 5, 2000 between the hours of 12:00 a.m. and 5:00 a.m. including all audio, written or computer-generated logs maintained for such dispatch and communications records. This should include all calls coming to dispatch or going out from dispatch and all calls recorded by the radio room between any officers. (**Of special interest is any communication between dispatch and Officer M. L. Centola. (APD No.: 2317))

Reese argues that, as there is evidence that Andreson called out the tag number of the Jeep, the radio records were relevant to show whether the vehicle Andreson saw was Reese's Jeep.

The trial court quashed the subpoena as overbroad. Reese's subpoena requests a great deal of material which would have no relevancy to the proceedings. The subpoena asks for communications between parties who could have no possible connection with the incidents relevant to the trial and encompasses a period several hours before and after the established time of the incident. A subpoena should be specific enough to relate the documents sought to the questions at issue. See *Plante v. State*, 203 Ga. App. 33, 34 (1) (416 SE2d 316) (1992). The trial court has the discretion to quash a subpoena which is unreasonable or oppressive. See OCGA § 24-10-22 (b) (1). We find that, based on the unreasonable scope of the material requested, the trial court did not abuse its discretion in quashing the subpoena. Even if the trial court erred in quashing the subpoena, in order to warrant a reversal Reese must show that there is a reasonable probability that, had the requested materials been provided, the outcome of the trial would have been different. See *Tuttle v. State*, 232 Ga. App. 530, 532 (2) (502 SE2d 355) (1998). The testimony of Officer Centola and the results of Reese's breathalyzer test are strong evidence in support of his guilt, and Reese cannot show that, had the requested records been provided, there was a reasonable probability of a different outcome.

4. Reese claims the trial court erred in ruling it had subject matter jurisdiction because the City Court of Atlanta is not legally constituted and established under the Georgia Constitution and other provisions of Georgia law. Our Supreme Court decided otherwise in *Wickham v. State*, 273 Ga. 563 (544 SE2d 439) (2001), and so this claim has no merit.

5. Reese argues that the trial court erred by considering his

motion to recuse because, under Uniform Superior Court Rule 25.3, another judge was required to be assigned to consider the recusal motion. We disagree. Under USCR 25.3, the trial court is required to determine whether the motion to recuse is timely, the accompanying affidavit is sufficient, and the motion states a legal ground for recusal. USCR 25.3; see *Christensen v. State*, 245 Ga. App. 165, 170 (10) (537 SE2d 446) (2000). If recusal is not warranted under the facts set forth in the affidavit, the trial judge need not assign the motion to another judge. *Gibson v. Decatur Fed. Sav. &c. Assn.*, 235 Ga. App. 160, 166 (3) (508 SE2d 788) (1998).

Reese maintains that the trial court had a pecuniary interest in the outcome of the trial because, should the trial court have decided that the city court was not legally established, his employment — and his financial future — would be endangered. Nevertheless, recusal is warranted only if the trial court's pecuniary interest in a proceeding is direct, certain, and immediate. See *DeLoach v. State*, 78 Ga. App. 482, 486-487 (2) (51 SE2d 539) (1949). "[T]he liability or pecuniary gain or relief to the judge must occur upon the event of the suit, not result remotely in the future from the general operation of laws and government upon the status fixed by the decision." (Punctuation omitted.) *Robinson v. State*, 86 Ga. App. 375, 378 (71 SE2d 677) (1952). Reese cannot show that the trial court had any direct and immediate interest in the outcome of the case; the effect of any ruling that the city court was not lawfully established on the trial court's future employment is a matter of speculation. The trial court did not err by ruling on Reese's motion to recuse because the motion was legally deficient on its face.

6. Reese claims the trial court erred by refusing to allow a defense witness to testify concerning an out-of-court statement made by State witness Andreson. Defense counsel maintained that the statement would be submitted for the purpose of showing Andreson's bias. However, Reese made no proffer as to what this statement would be. Furthermore, "[b]efore a witness may be impeached by calling other witnesses to prove acts or declarations showing partiality, a . . . foundation must first be laid by cross-examining the witness sought to be impeached as to his feelings toward the party." (Citation and punctuation omitted.) *Simmons v. State*, 266 Ga. 223, 227 (4) (466 SE2d 205) (1996). No foundation was laid for Andreson's impeachment on the question of his bias. The trial court did not err in sustaining the State's objection to the introduction of Andreson's out-of-court statement.

7. Finally, Reese argues that the trial court erred in not requiring the State to produce the original of the videotape of his arrest so that he could inspect the original for alterations or omissions. There is no basis for suspecting that the original tape was tampered with.

More importantly, the videotape used at trial was authenticated by Officer Centola as an accurate depiction of the arrest. We note that although Officer Centola was served with a subpoena requiring him to bring the original videotape to trial, he testified that he was not the custodian of the original tape. OCGA § 24-5-4 (b), the best evidence rule, does not apply to videotapes. See *Cleveland v. State*, 204 Ga. App. 101, 102 (2) (418 SE2d 430) (1992). We find no error in the trial court's failure to require the State to produce the original videotape.

Reese also includes an argument under this enumeration of error regarding the trial court's failure to allow a witness to testify. The argument is not supported by reference to the record and has no connection to the enumeration of error under which it appears. We will not consider it. See *Duffey v. State*, 232 Ga. App. 693 (498 SE2d 816) (1998).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED OCTOBER 23, 2001 —
RECONSIDERATION DENIED NOVEMBER 30, 2001 — ■■■■■

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Joseph J. Drolet, Solicitor-General, Gerald Mason, Assistant Solicitor-General*, for appellee.